```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
THE ESTATE OF STANLEY KAUFFMANN,

                Plaintiff,                     MEMORANDUM AND ORDER

        - against -                            16 Civ. 2509 (NRB)

ROCHESTER INSTITUTE OF TECHNOLOGY,

                Defendant.
------------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

The plaintiff, the Estate of Stanley Kauffmann (the "Estate"), sued Rochester Institute of Technology ("RIT") for copyright infringement in connection with a book published by RIT's academic press. RIT moved to transfer venue of this case to the Western District of New York, or, in the alternative, to dismiss the case for lack of venue. For the reasons set forth below, the motion to transfer venue is granted. The remainder of RIT's motion is denied as moot.

I.  **BACKGROUND**[1]

The late Stanley Kauffmann was a renowned author and film critic. Compl. ¶ 5. His estate is the successor owner of all of

---

[1] The factual background is drawn principally from plaintiff's complaint, ECF No. 1 ("Compl."). We also consider defendant's memorandum of law in support of its motion, ECF No. 17 ("Mem."), plaintiff's memorandum of law in opposition, ECF No. 23 ("Opp'n"), and defendant's reply memorandum of law, ECF No. 24 ("Reply"), and the documents submitted in support of the memoranda, ECF Nos. 18-22, in particular, the declaration of Laura Diponzio Heise, ECF No. 19 ("Heise Decl.").

1

his copyrights, id. ¶ 1, including the copyrights to over a hundred of Kauffmann's essays, id. ¶¶ 6-7.

In 2015, RIT's academic press published a collection of Kauffmann's essays in a book titled The Millennial Critic, which was edited by non-party Robert Cardullo. Id. ¶ 6; Opp'n 1. RIT's publication agreement with Cardullo provided, inter alia, that Cardullo would "indemnify and hold harmless [RIT] from any and all claims, demands, actions, suits, and proceedings, and all liabilities, losses, costs, damages, and expenses (including, without limitation, reasonable attorneys' fees) to the extent caused by or arising out of [The Millennial Critic] or anything contained in it." Heise Decl. Ex. B, ¶ X.

Prior to RIT's publication of the book, Cardullo had assured RIT that he held the intellectual property rights to publish the essays contained therein and had given to RIT a letter purportedly from the law firm Schiff Hardin LLP confirming that he held the rights. Compl. ¶ 8; id. Ex. L. This letter, however, is alleged to be a forgery. Id. ¶ 12. Cardullo is allegedly a repeated plagiarist who has duped other reputable publishers, including Penn State University Press, Western Michigan University, Oxford University Press, and The Hudson Review into publishing works to which he has no intellectual property rights. Id. ¶¶ 9-10 & Exs. G-J. The Estate freely alleges that Cardullo likewise duped RIT, although it argues that RIT should have conducted a more thorough

2

investigation before accepting Cardullo's representations. Id. ¶¶ 8, 12.

When the Estate learned of the publication of The Millennial Critic, its representatives notified RIT and Cardullo, in separate communiques, that Cardullo in fact did not have the rights to publish the essays. Id. Exs. K, M. In response, RIT discontinued sales of The Millennial Critic and attempted to recall the available copies of the book. Mem. 2-3. Cardullo, however, allegedly challenged the Estate's assertion and subsequently uploaded a copy of the book to the internet so that it became available free of charge. Compl. ¶¶ 14-15.

The Estate sued RIT for copyright infringement. RIT now seeks to transfer this case the Western District of New York, or, in the alternative, to dismiss the case for lack of venue.

**II. DISCUSSION**

    **A. Standard**

Federal district courts have broad discretion under 28 U.S.C. § 1404(a) to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

It is undisputed that this case could have been brought in the Western District. Fteja v. Facebook, Inc., 841 F. Supp. 2d

3

829, 833 (S.D.N.Y. 2012) ("A court electing to transfer an action, may only transfer such action to a district where it might have been brought initially, (i.e., a district where defendant is subject to personal jurisdiction and venue would be proper).") (internal quotation marks omitted).

Thus the only remaining question is whether transfer would be "for the convenience of the parties and witnesses" and "in the interest of justice." In determining whether to transfer venue, courts consider (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of the operative events; (5) the relative ease of access to sources of proof; (6) the weight accorded to plaintiff's choice of forum; (7) the availability of process to compel unwilling witnesses; (8) the forum's familiarity with the governing law; and (9) trial efficacy and the interests of justice based upon the totality of the circumstances. Schoenefeld v. New York, No. 08 CIV. 3269 (NRB), 2009 WL 1069159, at *2 (S.D.N.Y. Apr. 16, 2009). The factors do not comprise an exclusive list, and they should not be applied mechanically or formulaically but rather to guide the Court's exercise of discretion. Tole v. Glenn Miller Prods., Inc., No. 12 CIV. 6660 (NRB), 2013 WL 4006134, at *3 (S.D.N.Y. Aug. 6, 2013).

4

**B.   Application**

The Court is persuaded that this case should be transferred to the Western District.  First, and most importantly, as to trial efficiency and the interests of justice, "it is well established that the ability to implead a third-party in the proposed transferee forum and thereby resolve related claims in a single action weighs heavily in favor of transfer."  Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004) (collecting cases); see also Merkur v. Wyndham Int'l, Inc., No. 00 CV 5843 (ILG), 2001 WL 477268, at *6 (E.D.N.Y. Mar. 30, 2001) (collecting cases).  Here, RIT makes a compelling argument that Cardullo should be joined in this case, as Cardullo is alleged to have edited the infringing book, forged the letter on which RIT relied, duped RIT into publishing the infringing book, and signed a publishing agreement indemnifying RIT for any claims arising out of the book.  The publishing agreement, moreover, establishes that jurisdiction and venue are proper in the Western District of New York as to a dispute between RIT and Cardullo relating to the book.  See Heise Decl. Ex. B, ¶ XVIII (choice-of-forum provision states that "[j]urisdiction of any litigation with respect to this Agreement shall be in New York, with venue in a state or federal court of competent jurisdiction in Monroe County.").  Additionally, the parties agree that Cardullo is not present in the Southern District of New York.  Thus, RIT argues that, without

5

transfer to the Western District, RIT will be forced to pursue a separate claim against Cardullo in the agreed-upon jurisdiction. "Transfer under such circumstances substantially advances the interests of fairness, efficiency and judicial economy by preventing duplicative proceedings and thereby reducing the overall burden on the parties, non-party witnesses and the judicial system." Posven, 303 F. Supp. 2d at 406.

Plaintiff relies on Merkur to argue that the transfer is unwarranted because the possibility of third-party practice is remote. However, Merkur has no bearing on this case. In Merkur, one co-defendant anticipated that the second co-defendant would raise a meritorious personal jurisdiction challenge in the chosen forum and be dismissed from the case, which would then force the first co-defendant to engage in third-party practice against the second co-defendant in a different district. Consequently, the first co-defendant proposed transferring the entire case. The court concluded that the anticipated third-party practice was only a possibility because the second co-defendant had not yet even challenged personal jurisdiction in the original district. 2001 WL 477268, at *6.

In contrast, plaintiff does not raise any argument that all of the claims here could be litigated together in the Southern District. Plaintiff's main contentions are rather that, first, nobody knows Cardullo's current location, health, or wealth, and

6

second, if Cardullo is found there is every reason to believe that RIT's claims against him will be subordinated to others' claims in a "veritable orgy of litigation against Cardullo." Opp'n 12-14. This rhetoric aside, plaintiff offers no legal support for the contention that third-party practice is impracticable simply because some investigation may be required beforehand or because others may also have claims against the third-party defendant.

Indeed, given the existence of the indemnity clause in the publishing agreement, there is every reason to believe that RIT will vigorously pursue third-party practice against Cardullo. But unlike in Merkur, Cardullo is not currently a named defendant, which means that RIT must commence an action against him whether in this case or in a separate case. Fairness, efficiency, and judicial economy persuade us to transfer the case so that the rights of the Estate, RIT, and Cardullo can all be adjudicated in one proceeding.

Several other factors also favor transfer. Importantly, the locus of operative events occurred in the Western District of New York. While "[o]rdinarily a plaintiff's choice of forum is accorded great deference . . . [it] is accorded less weight to the degree that the case's operative facts have little or no connection with the transferor forum." Boehner v. Heise, 410 F. Supp. 2d 228, 240 (S.D.N.Y. 2006) (internal quotation marks omitted). The publication of the book occurred in the Western District, Compl.

Ex. C, and RIT is at home there, Reply 9. Consequently, the Western District is where the events and decisions surrounding the alleged infringement are most likely to have occurred. By contrast, the Southern District of New York has only the slimmest, if any, relationship to the facts of the case. While the plaintiff resides here and Kauffmann was a lifelong resident of the Southern District, these residencies have no bearing on the case's operative facts.

Furthermore, because the operative facts occurred in the Western District, it flows that the Western District would also be more convenient for the witnesses likely to be called, such as employees of RIT who interacted with Cardullo and made the decision to publish the book. The Western District is also where the relevant evidence is most likely to be located. Notably, the plaintiff does not contest that the gravitational center of this case lies in the Western District; nor, we believe, can it credibly do so.

The remaining factors -- the parties' convenience, the parties' relative means, the availability of process, and the forum's familiarity with the governing law -- do not favor retaining this action in the Southern District. "Essentially, no significant connection exists between the instant action and this District, other than [the plaintiff's residence] and the fact that the case was filed here. These minimal considerations are far

8

outweighed by the prospect of litigating [all of the claims] in the same action . . . ." Posven, 303 F. Supp. 2d at 408.

Therefore, transfer to the Western District is in the interests of justice and is appropriate under § 1404(a).

### III. CONCLUSION

For the foregoing reasons, RIT's motion to transfer venue to the Western District of New York pursuant to 28 U.S.C. § 1404(a) is granted. The remainder of RIT's motion is denied as moot.

**SO ORDERED.**

Dated:   New York, New York
         January 19, 2017

*[signature]*

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE