UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THE ESTATE OF STANLEY KAUFFMANN,

                                                    Plaintiff,

-vs-

ROCHESTER INSTITUTE OF TECHNOLOGY,

                                          Defendant.     DECISION & ORDER

_____     17-CV-6061-CJS-MWP

ROCHESTER INSTITUTE OF TECHNOLOGY,

                                       Third Party Plaintiff,

-vs-

ROBERT J. CARDULLO,

                                       Third Party Defendant.

_____

## APPEARANCES

For Plaintiff/Third Party Plaintiff:         Kenneth P. Norwick, Esq.
                                                    Norwick Schad & Goering
                                                    110 East 59th Street 29th Floor
                                                    New York, NY 10022
                                                    (212) 751-4440

For Defendant:                                  Mary Patricia Moore, Esq.
                                                    Bond, Schoeneck & King, PLLC
                                                    Avant Building
                                                    200 Delaware Avenue Suite 900
                                                    Buffalo, NY 14202
                                                    (716) 416-7037

For Third Party Defendant:                 In Default

## INTRODUCTION

**Siragusa, J.** This copyright infringement case is before the Court on the Plaintiff's and Defendant's cross-motions for summary judgment. Def.'s Mot. for Summary J., Dec. 4, 2017, ECF No. 52; Pl.'s Mot. for Summary J., Jan. 12, 2018, ECF No. 58. Defendant Rochester Institute of Technology ("RIT") has previously obtained a default against third party defendant Robert J. Cardullo. Clerk's Entry of Default, May 16, 2017, ECF No. 40. This case was originally filed in the Southern District of New York and by Memorandum and Order entered on January 20, 2017, ECF No. 25, was transferred to this Court. For the reasons stated below, the Court grants RIT's motion for summary judgment, ECF No. 52, with respect to The Estate's copyright infringement claim and Kauffmann's cross-motion for summary judgment, ECF No. 58, is denied.

## BACKGROUND

Plaintiff Stanley Kauffmann ("Kauffmann") was an author of numerous movie reviews primarily for THE NEW REPUBLIC, "an independent journal of opinion promoting novel solutions to the challenges of our time," and founded in 1914, with its principle office in New York City. About, THE NEW REPUBLIC (https://newrepublic.com/pages/about) accessed on Jul. 24, 2018.

At issue in this case is the republication of 141 of those reviews in a book authored by third party defendant Robert J. Cardullo ("Cardullo") and published by an entity belonging to RIT. The book is entitled *The Millennial Critic: Stanley Kauffmann on Film: 1999-2009*. The Estate of Stanley Kauffmann ("the Estate") claims that 44 of those reviews violated Kauffmann's copyright in them.[1] RIT claims that Kauffmann did not own the copyright to those works in Cardullo's book, since he and THE NEW REPUBLIC agreed in 2004 that all the reviews

---

[1] The Estate would have pursued claims on all 141 articles, but only 44 of them are registered, a prerequisite for suit. 17 U.S.C. § 412.

Kauffman wrote for the journal were a "work made for hire" as defined in the Copyright Act of 1976. 17 U.S.C. § 101.

The complaint lists the 44 allegedly infringing articles written by Kauffman as follows:

1. "Shakespeare in Love"
2. "Hurlyburly"
3. "The Thin Red Line"
4. "Affliction"
5. "Private Confessions"
6. "Dr. Akagi"
7. "The Children of Heaven"
8. "The Dreamlife of Angels"
9. "Devil's Island"
10. "EdTV"
11. "The Winslow Boy"
12. "A Midsummer's Night's Dream"
13. "Tea with Mussolini"
14. "Star Wars"
15. "Besieged"
16. "Eternity and a Day"
17. "An Ideal Husband"
18. "Autumn Tale"
19. "My Son the Fanatic"
20. "The Gambler"
21. "Lucie Aubrac"·
22. "West Beirut"·
23. "American Beauty"·
24. "Breakfast of Champions"·
25. "Jakob the Liar"
26. "Three Kings"
27. "The Straight Story"
28. "Bringing Out the Dead"
29. "Rosetta"
30. "The Insider"
31. "Ride with the Devil"
32. "Sweet and Lowdown"
33. "The End of the Affair"
34. "Natural Born Killers"
35. "Grand Illusion"
36. "D'Artagnan's Daughter"
37. "Greed"
38. "Photographer"
39. "Close Up 1927-1933"
40. "Projections 9"
41. "The Death of Film"
42. "American Film Audiences"
43. "Stanley Kubrick"[2]
44. "Marcello Mastroianni."

Compl. ¶ 7. Although the complaint does not state when the articles were published by THE NEW REPUBLIC, RIT states in its memorandum of law that the 2004 letter signed by Kauffmann and his editor at the paper, "although dated after the articles at issue were first published by THE NEW REPUBLIC in 1999, demonstrates that the parties intended, even prior to creation of the articles, that they were 'works made for hire.'" RIT's Mem. of Law 7, Dec. 4, 2017, ECF No. 52-16.

---

[2] Possibly a reference to "Kubrick: A Sadness," by Stanley Kauffmann in *The New Republic* (Aug. 16, 1999), *available at* https://newrepublic.com/article/131189/kubrick-sadness (last accessed Jul. 23, 2018).

STANDARD OF LAW

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, … demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a) (2015). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citation omitted).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Id.* at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

DISCUSSION

The facts are mostly undisputed; however, the inferences to be drawn from them are highly disputed. The Estate's claim of infringement, and RIT's defense, rely principally on the

letter revealed in discovery that was sent by Leon Wieseltier, Literary Editor of THE NEW REPUBLIC to Stanley Kauffman, dated March 22, 2004. Because of the letter's central importance to the resolution of the motion and cross motion for summary judgment, the Court will quote it in its entirety:

> March 22, 2004
>
> Stanley Kauffmann
> Penthouse C
> 10 West 15th Street
> New York, NY ·10011
>
> Dear Stanley,
>
> Like many publishing companies, *The New Republic* is working to expand into the web and related technologies, and in so doing, afford you maximum exposure. We've had a wonderful relationship with you over the years and see this expansion as a great opportunity to further promote you and your talents for our mutual benefit. Recent Supreme Court decisions have made it necessary that we explicitly confirm the terms under which you write for *The New Republic*.
>
> Thus, in the interest of responsibly managing our business, we are making efforts to memorialize in writing all of our agreements with our writers, including freelance contributors. Our agreement with you has always been an oral understanding, and among other things we do want to ensure that we are not violating your rights in any way. To that end, we'd like to confirm with you our understanding, of our past relationship with you, as well as our relationship with you and your contributions to *The New Republic* going forward.
>
> We have always understood that you have been writing articles for *The New Republic* as a freelance contributor. We have also always understood in doing business with you that, in light of our regular monthly compensation arrangement with you, all articles you have written for *The New Republic* have been "works made for hire," as that term is defined under the US Copyright laws. We'd like to confirm with you that the above understanding of our business relationship with you is correct, but also that the above understanding will remain in effect as to any future articles you write for *The New Republic*, unless and until we and you both agree otherwise in writing.
>
> Please acknowledge your agreement with us about this by so indicating with your signature below.

| | |
|---|---|
| Many thanks, | Date: <u>March 24, 2004</u> |
| Sincerely, | Agreed: <u>  ✓  </u> |
| /s/ Leon Wieseltier | Author Signature: <u>/s/ Stanley Kauffmann</u> |
| Leon Wieseltier<br>Literary Editor | |

Letter from Leon Wieseltier to Stanley Kauffmann (Mar. 22, 2004) *attached to* Myer Decl. as Ex. A, [ECF No. 52-15](#) ("letter agreement"). The parties agree that the letter on its face is a contract and that Kauffmann signed the agreement in the space provided.

RIT relies heavily on the letter to establish that Kauffmann's reviews written for THE NEW REPUBLIC were works for hire. The Copyright Act of 1976 defines a "work made for hire" as "a work specially ordered or commissioned for use as a contribution to a collective work…, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101. It defines a "collective work" as "a work, such as a periodical issue…, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." *Id*. The Copyright Act further states that:

> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U.S.C. § 201(b). RIT therefore argues that as works made for hire, the articles published by it in Cardullo's book do not infringe any copyright owned by Kauffmann, or the Estate.

The Estate attacks the letter agreement on a number of fronts: the fact that agreement encompassed works authorized by Kauffmann over a 46 year period; the fact that THE NEW REPUBLIC gave to Kauffmann the copyrights for works published under the 1909 Copyright Act;

an affidavit from the letter's author stating he did not understand the phrase "works made for hire"; an affidavit from a close friend of Kauffmann's stating, *inter alia*, that Kauffmann believed he owned the copyright to all his writings; evidence that Kauffmann licensed his writings that had been published in THE NEW REPUBLIC to others; and arguments that Kauffmann, at age 88 at the time of the letter, with a sick wife, trusted his editor, Leon Wieseltier, and would have signed anything requested, even without understanding the ramifications. Significantly, at oral argument, both sides agreed that the letter was on its face a contract and that New York law controlled.

However, neither side ever addressed what the Court would characterize as the "elephant in the room," the parol evidence rule. The 2004 letter agreement purports to memorialize in writing a preexisting oral contract, evidently dating back to when Kauffmann started writing for THE NEW REPUBLIC in 1958. On its face, it is unambiguous. Both parties agree that since he started writing for the journal, "all articles [he has] written for The New Republic have been 'works made for hire,'" as that term is defined under the US Copyright laws." Letter at 1. By signing the letter, and checking the line "agreed," Kauffmann assented to that understanding. Therefore, on its face, the letter contains all the terms necessary for a contract: offer, acceptance, consideration, mutual assent, and an intent to be bound. *See Kavitz v. IBM*, 458 Fed. Appx. 18, 19 (2d Cir. 2012) ("To establish the existence of an enforceable agreement under New York law, which the parties agree applies here, there must be 'an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound.' *Civil Serv. Employees Ass'n, Inc. v. Baldwin Union Free Sch. Dist*., 84 A.D.3d 1232, 924 N.Y.S.2d 126, 128 (2d Dep't 2011) (internal quotation marks omitted)).

Viewing the Letter as a contract, and having found that its terms are unambiguous, the Estate's submission of extrinsic evidence regarding the Letter is admissible only if it is permitted under the parol evidence rule. That rule is well established under New York law:

> [A]bsent fraud or mutual mistake, where the parties have reduced their agreement to an integrated writing, the parol evidence rule operates to exclude evidence of all prior or contemporaneous negotiations between the parties offered to contradict or modify the terms of their writing. (*Fogelson v. Rackfay Constr. Co.*, 300 N.Y. 334, 90 N.E.2d 881; *Thomas v. Scutt*, 127 N.Y. 133, 27 N.E. 961.) Although at times this rule may seem to be unjust, "on the whole it works for good" (*Mitchill v. Lath*, 247 N.Y. 377, 380, 160 N.E. 646) by allowing a party to a written contract to protect himself from "perjury, infirmity of memory or the death of witnesses." (*Thomas v. Scutt,* 127 N.Y. 133, 142, 27 N.E. 961, *supra*; *see, generally*, Richardson, Evidence [10th ed.], §§ 601–634.)

*Marine Midland Bank-S. v. Thurlow*, 53 N.Y.2d 381, 389 (1981). In a case relied upon by both parties, the district court addressed a situation where the terms of the agreement (proved only by an endorsement on a payment check) were not always clear. In that case, the district court held that "there should be evidence of the oral agreement which the one-line written statement memorializes." *Playboy Enterprises, Inc. v. Dumas*, 831 F. Supp. 295, 308 (S.D.N.Y.), *opinion modified on reargument,* 840 F. Supp. 256 (S.D.N.Y. 1993), and *aff'd in part, rev'd in part,* 53 F.3d 549 (2d Cir. 1995). No such problem is present here. The 2004 letter sets out the agreement clearly and, unlike the *Playboy* case, uses the term of art in the Copyright Act: "work[s] made for hire."

Moreover, The Estate has failed to come forward with case law that supports its arguments that the 44 articles at issue first published in 1999 were not, as a matter of law, works for hire solely because the agreement purportedly memorialized a preexisting understanding going back 46 years.

CONCLUSION

Based on the foregoing, RIT's motion for summary judgment, [ECF No. 52](), is granted with respect to The Estate's copyright infringement claim on the 44 registered articles reproduced in the book *The Millennial Critic: Stanley Kauffmann on Film: 1999-2009"* and detailed above in the Background section of this decision. Kauffmann's cross-motion for summary judgment, [ECF No. 58](), is denied. The Clerk is directed to enter judgment for RIT. RIT may have until September 30, 2018, to move for a default judgment against third party defendant Cardullo. If no such motion is made by then, the Clerk is directed to close this case.

IT IS SO ORDERED.

Dated: August 6, 2018
        Rochester, New York

        ENTER:

                                      /s/ Charles J. Siragusa
                                      CHARLES J. SIRAGUSA
                                      United States District Judge